# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Margaret Cramer, ) | Civil Action No. 5:14-03857-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| National Casualty Company, ) | |
| ) | **ORDER AND OPINION** |
| Defendant. ) | |
| _____ ) | |

    Plaintiff Margaret Cramer ("Plaintiff") filed this declaratory judgment action against Defendant National Casualty Company ("Defendant"), seeking a declaration by the court that Plaintiff is entitled to underinsured motorist coverage from Defendant. (ECF No. 1-1 at 10 ¶ 36.)

    This matter is before the court on a motion by Plaintiff for summary judgment pursuant to Fed. R. Civ. P. 56 ("Plaintiff's Motion"). (ECF No. 45.) Defendant opposes Plaintiff's Motion, and filed a motion for summary judgment ("Defendant's Motion") asserting that the court should find that Plaintiff does not qualify as an "insured" under the policy. (ECF No. 55.) The court **GRANTS** Plaintiff's Motion and **DENIES** Defendant's Motion.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

    St. Matthews is a non-emergency medical transport company that transports patients to and from doctors' appointments. (ECF No. 45-2, Pl.'s Dep. 8:7-13.) On September 16, 2013, Plaintiff was assigned to an ambulance with Justin Jackson, her co-worker. (ECF No. 55-3 at 1 ¶ 2.) Plaintiff and Jackson transported a patient to the H. F. Mabry Cancer Center for treatment. (*Id.* at ¶ 4.) While Plaintiff was waiting for the patient to complete treatment, she witnessed an accident on Cook Road, which runs in front of the cancer center. (ECF No. 45-2, Pl.'s Dep. 15:12-22.) Plaintiff activated the ambulance's lights and pulled onto the roadway behind the accident vehicles

to barricade the accident scene from oncoming traffic. (*Id.* at 16:11-12, 17:11-15, 19:10-12, 48:18-24, 52:16.) Plaintiff left the ambulance's lights on and engine running as she exited the vehicle to assess the accident scene. (*Id.* at 19:16-20:2.) After checking on the motorists, Plaintiff walked to the shoulder of the road, which was located across from the ambulance, in order to avoid traffic. (*Id.*) Plaintiff contacted 911 to request highway patrol. (*Id.* at 27:14, 23.) Plaintiff then headed towards the ambulance to radio her employer to report the accident. (*Id.* at 23: 8-10.) On her way to the ambulance, but while still on the shoulder of the road, she waved a few cars through so that she could cross safely. (*Id.*) During the process of returning to the ambulance, while still standing on the shoulder of the road, Plaintiff was struck by an underinsured vehicle operated by Mary Ann Walley. (*Id.* at 29:22-30:2, 30:23, 50:8, 54:5-6.) Plaintiff estimates that at the time she was struck by the vehicle, she was standing about eight feet away from the ambulance. (*Id.*) Plaintiff suffered injuries as a result of being struck by the vehicle.

Defendant issued a policy of insurance to Plaintiff's employer, St. Matthews Ambulance Service, providing Underinsured Motorist ("UIM") coverage with limits of $100,000.00 per accident. (ECF No. 45-3.) Defendant denied UIM coverage to Plaintiff asserting that she was not an "insured" under the language of the policy. Subsequently, Plaintiff filed this action in the Court of Common Pleas for Orangeburg County on August 25, 2014. (ECF No. 1-1.) On October 2, 2014, Defendant filed for removal to this court on the basis of diversity jurisdiction. On October 20, 2015, Plaintiff filed a motion for summary judgment. (ECF No. 45.) Subsequently, Defendant filed a response in opposition on November 6, 2015. (ECF No. 47.) Plaintiff filed a reply to Defendant's response. (ECF No. 51.) Thereafter, Defendant filed a motion for summary judgment on December 3, 2015. (ECF No. 55.) Plaintiff filed a response in opposition. (ECF No. 56.) A hearing on the motions was held on April 12, 2016.

2

## II.     LEGAL STANDARD

A.     Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

B.     General Principles of South Carolina Insurance Law

In an action based upon diversity of citizenship, the relevant state law controls. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under South Carolina law, insurance policies are subject to the general rules of contract construction. *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *Id.* The court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. *Id.* "[I]n construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 348 (S.C. 1976). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Hawkins v. Greenwood Dev. Corp.*, 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). "Where language used in an

3

insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." *Poston v. Nat'l Fid. Life Ins. Co.*, 399 S.E.2d 770, 772 (S.C. 1990).

An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. *S.C. Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). A policy clause extending coverage must be liberally construed in favor of coverage, while insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. *M & M Corp. v. Auto-Owners Ins. Co.*, 701 S.E.2d 33, 35 (S.C. 2010); *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." *S.C. Farm Bureau Mut. Ins. Co. v. Wilson*, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

### III.     ANALYSIS

The material facts of this case are undisputed. The parties agree that Plaintiff was on the shoulder of the road across from the ambulance and attempting to clear the roadway by directing a few cars through so that she could reenter the ambulance when she was struck by another vehicle. (*See* ECF Nos. 45-1 at 2; 55-1 at 2-3.) The parties agree that Defendant issued a UIM coverage policy to Plaintiff's employer. Under the UIM coverage policy, an "insured" is defined as "anyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'." (ECF No. 45-3 at 3 ¶ B(2)(a).) Under the policy, "occupying" is defined as "in, upon, getting in, on, out or off." (*Id.* at 5 ¶ F(2).)

Here, the parties disagree as to the interpretation of the UIM coverage policy's definition of "occupying." Plaintiff asserts that she is entitled to summary judgment because, under the UIM

4

coverage policy, Plaintiff was "occupying" the ambulance at the time of the accident. Alternatively, Plaintiff asserts that the definition of "occupying" is ambiguous such that it should be construed in favor of providing Plaintiff coverage under the UIM coverage policy. Finally, Plaintiff asserts that the UIM coverage policy's definition of "insured" is void because it is contrary to South Carolina law, such that Plaintiff should be entitled to coverage because she was using the ambulance at the time of the accident. Defendant disagrees and asserts that it is entitled to summary judgment because the definition of "occupying" is not ambiguous, and because Plaintiff was not "occupying" nor using the ambulance at the time of the accident.

1. Ambiguity of Policy Terms

Prior to determining whether Plaintiff was "occupying" the ambulance, this court must determine whether the term is ambiguous as defined. As a threshold matter, when determining the definition of "occupying" in an identical policy to the one at issue, the Court of Appeals in *S.C. Prop. & Cas. Guar. Ass'n v.* Yensen, 548 S.E.2d 880 (S.C. App. 2001), did not address whether the definition was ambiguous. Presumably, the court determined that the term was unambiguous since the court ultimately decided that the plaintiffs were not occupying the vehicle within the plain meaning of the word.

Plaintiff provides this court with authorities from other jurisdictions where the courts found that "in, upon, getting in, on, out or off" was ambiguous. *See Genther v. Progressive Cas. Ins. Co.*, 681 A.2d 479 (Me. 1996); *Pennington v. Ohio Cas. Ins. Co.*, 579 N.E.2d 507 (Oh. Ct. App. 1989). In *Genther*, the Supreme Judicial Court of Maine held that "in the abstract, the meaning of the term 'occupying,' may be clear, [but] it becomes ambiguous when applied." *Genther*, 681 A.2d 479, 480. In determining that a latent ambiguity existed in the definition of "occupying," it examined appellate opinions from other jurisdictions and noticed that different courts reached

5

varied conclusions when attempting to discern what it meant to be "in, on, getting into, out of or off" a vehicle. *Id.* at 480-82. In *Pennington*, the Court of Appeals of Ohio noted the ambiguity in the definition because it was not clear whether "getting" modified "out," "on," and "off," as well as "in." *Pennington*, 579 N.E.2d at 509. The court further noted that "occupying" was ambiguous because it was susceptible to more than one meaning. *Id.* at 509-10. Though the court finds these cases persuasive, the court is not convinced that "occupying" is ambiguous.

In this court's view, the crux of Plaintiff's case is not whether the definition of "occupying" is ambiguous, but rather, what reasonably constitutes "getting in," which is the term this court finds most aptly describes Plaintiff's actions. Because the parameters of that action are not specifically set forth by the policy, this court is required to reasonably construe the term and determine whether it is applicable to Plaintiff's actions. However, that the court is required to reasonably interpret an undefined term does not render "occupying" ambiguous.

Under South Carolina law, courts are required to construe policy language according to the plain and ordinary meaning of the words. *B.L.G. Enters. Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). Unlike in *Pennington*, the court is not concerned with whether "getting" modifies "out" or "off" because it is clear that "getting" modifies "in" here, and, as discussed below, the issue before the court is whether Plaintiff was "getting in" the vehicle. Further, in construing "getting in" according to the plain meaning of the words, it is clear that "getting in" describes the process of entering a vehicle. This court further finds that "getting in" is not intended to require physical contact with the vehicle because the definition of "occupying" already includes being "in" or "upon" the vehicle. Thus, if one is in the process of entering a vehicle and is already physically in contact with the car, the person is by definition either "in" or "upon" the car. *See McAbee v. Nationwide Mut. Ins. Co.*, 152 S.E.2d 731, 733 (S.C. 1967) (holding that "upon"

6

requires actual physical contact with the insured vehicle). Therefore, this court finds that "getting in" is clearly intended to include as "insured" a category of people who are attempting to enter a vehicle, but have not yet made actual physical contact with it.

2. Applicability of Policy Terms

Because the court has determined that "occupying" is not ambiguous, the court must now decide whether Plaintiff was "occupying" the vehicle as defined in the policy. Though South Carolina courts have had the opportunity to address similar "occupying" provisions, the courts have not been called upon to define "getting in" a vehicle for the purposes of determining occupancy. Because the case before the court is akin to a matter of first impression, this court is required to predict how the Supreme Court of South Carolina might rule on this issue. *Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016).

Recently, the Supreme Court of South Carolina has indicated that whether a person is "occupying" a vehicle is to be determined on a case by case basis. *S.C. Farm Bureau Mut. Ins. Co. v. Kennedy*, 730 S.E.2d 862, 866 (S.C. 2012). Further, the term should be construed liberally, keeping in mind the central purpose of the UIM statute, which is to provide coverage where the injured party's damages exceed the liability limits of the at-fault motorist's policy. *Id.* In *Kennedy*, the court found that the appellant was "upon," and therefore, occupying the vehicle where he had left the engine running on his employer's vehicle before running an errand, and had his hand on the back of the truck while engaging in a conversation. *Id.* at 868. The court determined that his running away from the car in an attempt to avoid being hit by the uninsured motorist did not defeat his status as an "insured" since he was occupying the vehicle. *Id.* at 868. The particular provision addressed in *Kennedy* required physical contact, but the court noted that to construe the

7

requirement "in a manner that would require Kennedy to succumb to the approaching danger rather than relinquish physical contact would be unreasonable and unconscionable." *Id.* at 866-67.

Similarly, in *Whitmire v. Nationwide Mut. Ins. Co.*, 174 S.E.2d 391 (S.C. 1970), the Supreme Court found that the plaintiff was "alighting from" or getting out of the vehicle, and therefore, "occupying" the vehicle when he began to run to avoid a collision with an oncoming car. 174 S.E.2d at 191. The facts indicate that he was struck while within two to three feet of the automobile. *Id.* The South Carolina Supreme Court determined that the plaintiff was an "insured" within the meaning of the policy even though he was no longer in contact with the vehicle, because he was attempting to avoid danger and it was "reasonable to conclude that coverage was intended to protect … against the hazards from passing automobiles in the vicinity while the guest … is still engaged in the completion of those acts reasonably to be expected from one getting out of an automobile under similar conditions." *Id.* Further, the court noted that the meaning of "alighting from" must be construed liberally and "related to the particular use of the automobile and the hazards to be encountered from such use." *Id.*

Conversely, in *S.C. Prop.and Cas. Guar. Ass'n v. Yensen*, the Court of Appeals declined to extend UIM coverage to plaintiffs that were standing near the insured vehicle at the time of the accident because they were not occupying the vehicle. 548 S.E.2d 880 (S.C. App. 2001). In *Yensen*, plaintiff Yensen's car was disabled on the shoulder of the interstate, and plaintiff Yensen was subsequently picked up by highway patrol officer Barnhill, Yensen's co-plaintiff. *Id.* at 882. Later, a tow truck driver began hooking chains to Yensen's car. Both Barnhill and Yensen were standing near the driver's side of Yensen's car when they were struck by an underinsured motorist. *Id.* at 883. Pursuant to the tow truck company's underinsured motorist coverage, an "insured" was defined as "anyone else 'occupying' a covered auto." *Id.* The policy defined "occupying" as "in,

upon, getting in, on, out or off." *Id.* The trial court granted summary judgment to the insurance company because neither Barnhill nor Yensen was occupying the tow truck as defined in the policy. *Id.* Yensen testified that he planned to leave the scene with the tow truck driver. *Id.* In affirming the trial court's decision, the Court of Appeals determined that under the plain meaning of the words, neither plaintiff could be said to be "in, upon, getting in, on, out or off" the tow truck. *Id.* at 883. Although plaintiff Yensen had the intent to enter the vehicle, he was not in the process of getting in the vehicle because he was not "still engaged in the completion of those acts reasonably expected from one getting [in] an automobile under similar conditions." *Id.* at 884 (citing *Whitmire v. Nationwide Mut. Ins. Co.*, 174 S.E.2d 391 (S.C. 1970)).

Although the Supreme Court of South Carolina has not specifically delineated a test for interpreting the "occupying" provision, through an analysis of the case law, this court distills factors weighed by the Supreme Court. First, it is clear that physical contact with the insured vehicle at the time of the accident is not required for a plaintiff to be "occupying" the vehicle even where the policy states, either impliedly or explicitly, that physical contact is required. *See Kennedy*, 730 S.E.2d 862 (finding that the plaintiff was "upon" the car because he was touching the car prior to fleeing in order to avoid collision in spite of the fact that the policy explicitly contained a physical contact requirement and the court previously determined in *Mcabee* that "upon" requires physical contact). Second, the court considers the purpose of UIM coverage and construes policy terms liberally, wherever possible, in favor of such coverage. In construing policy terms that describe a process, such as "getting in" or "alighting from," the court considers whether the plaintiff is still reasonably engaged in the completion of that process. *See Yensen*, 548 S.E.2d at 884 (finding that Yensen's intent to enter the vehicle was not enough to making a finding that he was "getting in" the vehicle because he was not "still engaged in the completion of those acts

9

reasonably expected from one getting [in] an automobile under similar conditions." (citing *Whitmire v. Nationwide Mut. Ins. Co.*, 174 S.E.2d 391 (S.C. 1970))). Third, the court also requires a causal connection between the accident and the plaintiff's use of the insured vehicle. The court takes into consideration the specific use of the automobile around the time of the accident, and any possible hazards that might be associated with such use, which might have an effect on the reasonableness of plaintiff's engagement in completing a process, such as "getting in" the vehicle. *See Whitmire*, 174 S.E.2d at 191 (noting that contract terms must be construed liberally and "related to the particular use of the automobile and the hazards to be encountered from such use."). Finally, the court also appears to consider factors such as time, intent, and proximity. *See Kennedy*, 730 S.E.2d at 866 (noting that the plaintiff left the engine running with a dog inside the vehicle while he ran a business errand, which implies that the plaintiff intended to quickly return to the insured vehicle); *Whitmire*, 174 S.E.2d at 394 (noting that the plaintiff took a direct route when getting out of the insured vehicle and was struck by the uninsured motorist within two to three feet thereof); *Yensen*, 548 S.E.2d at 884 (noting that even though the plaintiff was close to the insured vehicle at the time of the accident, his intent to occupy the tow truck was expressed only after the accident and not made evident by his actions).

   First, in applying the aforementioned factors to this case, the court finds that Plaintiff was not in physical contact with the insured ambulance at the time of the accident nor in the immediate time preceding the accident. Thus, contrary to Plaintiff's assertion that Plaintiff was "upon" the ambulance, this court finds that the lapse in time between Plaintiff's last physical contact with the vehicle and the accident precludes such a finding.

   Second, even in liberally construing the terms of the policy while considering the evidence in the record, this court cannot find that Plaintiff was "getting out" or "getting off" the insured

10

ambulance as Plaintiff argues. Plaintiff testified that she got out of the vehicle to check on the motorists involved in the accident, then she crossed the street to safely stand on the shoulder of the road to make a phone call. Plaintiff was not struck by the uninsured motorist on the way to checking on the motorists involved in the accident, nor was she struck on her way to stand on the shoulder of the road. Plaintiff was struck by the uninsured motorist after she made the phone call, and was on her way back to the ambulance.

Third, this court considers the use of the insured vehicle around the time of the accident and any hazards inherent to such use. Here, the insured vehicle was an ambulance. Ambulances are vehicles not only used to transport paramedics and patients, but they also contain medical equipment and communicative devices used to contact dispatch and other emergency services. Because ambulances are generally used to transport patients and respond to emergencies, the use of an ambulance necessarily requires getting into and out of the vehicle to perform job-related functions, such as placing a patient in the vehicle, contacting dispatch, or retrieving medical equipment. When ambulances are used to respond to emergencies, such as in this case, the hazards associated with the use of the vehicle in that context might vary from the hazards associated with the use of the ambulance to transport a patient in a non-emergency situation.

Here, Plaintiff was initially dispatched to transport a patient to an appointment and wait for that patient to conclude her appointment before transporting her back home. While waiting, Plaintiff witnessed an accident and responded to it. In driving the ambulance to respond to the accident on the roadway, Plaintiff used the ambulance to barricade the accident in order to prevent any further problems. Plaintiff activated the lights on the vehicle and kept the engine running. In order to respond to the accident, Plaintiff was required to get out of the vehicle to check on the motorists involved. Based on the location of the accident and the fact that Plaintiff might be

11

required to make trips between her vehicle and the vehicles involved in the accident, there was an elevated risk that Plaintiff might be hit by a car.  In an attempt to avoid that danger, Plaintiff crossed one lane of the roadway to stand on the shoulder of the road to make a phone call.  Once Plaintiff concluded her phone call and realized that she needed to contact dispatch from the radio in the ambulance, Plaintiff proceeded to leave the shoulder to go to the ambulance.  In doing so, Plaintiff allowed some cars to pass to avoid being hit while trying to get to the ambulance.  However, Plaintiff was struck by an uninsured motorist before she was able to complete the process of crossing the street and getting into the ambulance.

In this case, the court finds that Plaintiff was engaged in the completion of acts reasonably expected from one "getting in" an ambulance under similar conditions. The court finds that Plaintiff's intent to occupy the ambulance was clear, as it is undisputed that the engine was running and she was walking back to the ambulance.  The court further finds that like the plaintiff in *Whitmire*, Plaintiff's route back to the ambulance was direct, and was only interrupted by the passing of other cars, which was a hazard that Plaintiff was attempting to avoid. To find otherwise would require plaintiffs, whose use of insured vehicles requires them to occasionally be in or near a roadway, to walk into traffic and put themselves in harm's way in order to insure that their actions can be construed as "getting in" the insured vehicle.  Such a holding would be contrary to the Supreme Court of South Carolina's decision in *Kennedy*, as well as to the legislative purpose behind the enactment of the UIM statute.  *See Kennedy*, 730 S.E.2d at 866 (noting that requiring the plaintiff to remain in the path of the oncoming vehicle was unreasonable, unconscionable, and contrary to the purpose of the UIM statute which aims to provide a remedy for the benefit of injured

persons harmed by an at-fault motorist with limited liability coverage). Accordingly, this court finds that Plaintiff is entitled to summary judgment as a matter of law.[1]

## IV.     CONCLUSION

Upon careful consideration of the entire record, this court finds that "occupying" as defined in the UIM policy is not ambiguous. Based on the plain meaning of the term as defined in the policy, this court finds that Plaintiff was "occupying" the insured vehicle because she was "getting in" the vehicle. Accordingly, Plaintiff is an "insured" pursuant to the terms of the UIM policy. As such, Plaintiff's Motion for Summary Judgment (ECF No. 45) is **GRANTED**. Further, Defendant's Motion for Summary Judgment (ECF No. 55) is **DENIED**.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

June 7, 2016
Columbia, South Carolina

---

[1] Because the court finds that Plaintiff is an insured under the policy, it is not necessary for this court to determine whether the definition of insured, which requires occupancy of the vehicle, is contrary to South Carolina law, which only requires that an insured use the vehicle. *See* S.C. Code Ann. § 38-77-30(7) (2016).